**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION**

| | |
|---|---|
| ROMAN CHRISTIAN HIGDON, | |
| Plaintiff, | CIVIL ACTION NO.: 6:19-cv-37 |
| v. | |
| DENNIS COLLIER; and TAMARSHE SMITH, | |
| Defendants. | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the Court on Defendants Dennis Collier and Tamarshe Smith's

Motion for Summary Judgment.  Doc. 23.  Plaintiff filed a Response, opposing Defendants'

Motion for Summary Judgment.[1]  Doc. 27.  For the following reasons, I **RECOMMEND** the

Court **GRANT** Defendants' Motion for Summary Judgment, **DIRECT** the Clerk of Court to

**CLOSE** this case and enter the appropriate judgment, and **DENY** Plaintiff *in forma pauperis*

status on appeal.

### PROCEDURAL HISTORY

Plaintiff, who is presently incarcerated at Hays State Prison in Trion, Georgia, filed this

action asserting claims under 42 U.S.C. § 1983 based on events that occurred while he was

---

[1]     Defendants moved for summary judgment on January 4, 2021.  Doc. 23.  Plaintiff's Response
was due by January 25, 2021; however, the Court did not receive a Response from Plaintiff until April 5,
2021.  Doc. 27.  After receiving Plaintiff's untimely Response, the Court ordered Plaintiff to show cause
as to why his untimely Response should be accepted.  Doc. 29.  Plaintiff responded to the Court's show
cause Order, explaining his Response to Defendants' summary judgment motion was untimely due to
placement in segregation and disruptions from the COVID-19 pandemic.  Doc. 30.  Additionally,
Defendants have presented no argument opposing Plaintiff's untimely Response.  Accordingly, the Court
excuses Plaintiff's untimeliness and will consider Plaintiff's Response.

incarcerated at Smith State Prison in Glennville, Georgia, in July 2017.  Doc. 1.  After conducting frivolity review, the Court dismissed Plaintiff's claims for monetary damages against Defendants in their official capacities and Plaintiff's claims against Defendant Robinson. Doc. 9.  However, the Court permitted Plaintiff to proceed with his Eighth Amendment claims against Defendants Smith and Collier.  Id.

Following service of Plaintiff's Complaint, Plaintiff filed a motion for leave to file an amended complaint.  Doc. 17.  Plaintiff sought to amend his Complaint to change the name of Defendant Brian Collier to Dennis Collier and replace his references in his initial Complaint to the term "MK4" with the term "MK9."  Id.  Additionally, Plaintiff sought to add Warden Doug Adams as a Defendant.  Id.  The Court granted in part and denied in part Plaintiff's Motion. Doc. 19.  The Court only permitted Plaintiff to amend his Complaint to change Defendant Brian Collier to Dennis Collier and the type of spray he alleges was used on him and directed Plaintiff to file an Amended Complaint.  Id.  Plaintiff complied and filed an Amended Complaint, which became the operative Complaint in this action.  Doc. 22.  However, other than changing Defendant Collier's first name and the term "MK4" to "MK9," the allegations in Plaintiff's Amended Complaint and initial Complaint are the same.

Plaintiff alleges on July 25, 2017, Defendant Collier sprayed him with chemical agent MK-9, which amounted to excessive force.  Doc. 22 at 2.  Plaintiff further alleges Defendant Smith, the Deputy Warden of Security, sent prison officials to the dormitory and authorized their use of force.  Id.  In his Amended Complaint, Plaintiff states he was complying with Defendant Collier's orders when he was sprayed, the use of force was not justified, and as a result of being sprayed with MK-9, he now needs glasses to read and an inhaler.  Id. at 2–3.

**UNDISPUTED MATERIAL FACTS**

Local Rule 56.1 of the Southern District of Georgia provides a party moving for summary judgment must include "a separate, short, and concise statement of the material facts as to which it is contended there exists no genuine dispute to be tried as well as any conclusions of law thereof."  Local R. 56.1.  Defendants submitted a Statement of Material Fact ("SMF") in support of their Motion for Summary Judgment, in accordance with the Federal Rules of Civil Procedure and Local Rule 56.1.  Doc. 23-2.  Defendants' SMF relies on Plaintiff's deposition transcript, Plaintiff's use of force medical assessment, a disciplinary report issued to Plaintiff regarding his noncompliance and an appeal response for that disciplinary report, Plaintiff's disciplinary history, affidavits of Dennis Collier and Tarmarshe Smith, a copy of Georgia Department of Corrections' Standard Operation Procedures for Use of Force and Restraint for Offender Control ("Use of Force SOP"), and a use of force incident report for July 25, 2017 . Docs. 23-3 to 23-11.

Plaintiff filed a Response to Defendants' Motion for Summary Judgment.  Doc. 27. Plaintiff's Response includes a section labeled "Plaintiff's Statement of Disputed Factual Issues," which includes six enumerated paragraphs, disputing Defendants' SMF.  Id. at 2. However, Plaintiff does not provide any citations to evidence in the record in his Statement of Disputed Factual Issues, nor did he submit any other exhibits or evidence in his Response. Further, while Plaintiff states he is making a "declaration" in his Response, Plaintiff's "declaration" does not meet 28 U.S.C. § 1746's requirements.  An unsworn declaration must contain a certification by the declarant it is being made under penalty of perjury.  See 28 U.S.C. § 1746 (providing a matter may be proven by an unsworn declaration so long as it is in writing, subscribed, and dated and states it is made "under penalty of perjury").  Plaintiff fails to swear

under penalty of perjury in his declaration.  Furthermore, Plaintiff's Statement of Disputed

Factual Issues is merely a list of issues he claims are disputed, without any explanation as to why

or how those issues are disputed.  See, e.g., Doc. 27 at 2 ("There is a dispute of rather [sic] or not

the satiation posed a threat to officers and inmates at the time MK9 was used."  "There is a

dispute of rather [sic] or not did I Plaintiff post a threat.").

Accordingly, the Court will not consider Plaintiff's Statement of Disputed Factual Issues,

as Plaintiff did not satisfy Local Rule 56.1.  All facts proffered by Defendants that have

evidentiary support in the record are deemed admitted.  See Local R. 56.1; Fed. R. Civ. P. 56(e);

see also Williams v. Slack, 438 F. App'x 848, 849–50 (11th Cir. 2011) (finding no error in

deeming defendants' material facts admitted where pro se prisoner failed to respond with

specific citations to evidence and otherwise failed to state valid objections); Scoggins v. Arrow

Trucking Co., 92 F. Supp. 2d 1372, 1373 n.1 (S.D. Ga. 2000) (finding, under Local Rule 56.1

and Eleventh Circuit precedent, "all unopposed fact statements supported by the evidentiary

materials of record are deemed admitted").

In light of these circumstances, and after reviewing the parties' submissions, the Court

identifies the following undisputed, material facts for the purposes of evaluating Defendants'

Motion for Summary Judgment:

Plaintiff is a state prisoner, currently incarcerated at Hays State Prison in Trion, Georgia.

However, at the time relevant to Plaintiff's excessive force claim, he was housed at Smith State

Prison in Glennville, Georgia.  Doc. 23-2 at 1.  Defendant Collier was a member of the Georgia

Department of Corrections' Correctional Emergency Response Team ("CERT") at Smith State

Prison and Defendant Smith was the Deputy Warden of Security at the time of the incident.  Id.

On July 25, 2017, at around 3:30 p.m., Plaintiff and approximately 10 other inmates were lined up against a fence outside Plaintiff's dormitory—dormitory D-2—waiting to go to chow. Id. at 2.  Dormitory D-2 is a two-level dorm containing 48 cells and housing approximately 96 inmates.  Id.  Sergeant Robinson ordered a lockdown of D-2 in order to look for a missing broom or mop.  Id.  Because inmates from across the dorm were approaching the dormitory exit, Sergeant Robinson instructed the inmates to go back in D-2 and lockdown.  Id.  When a dormitory is placed on lockdown, inmates go to their assigned cells, with or without an escort from a prison official, and their cell doors are closed and locked automatically.  Id.  The inmates, including Plaintiff, were upset by Sergeant Robinson's lockdown order and informed him they disagreed with his decision to lock down the dorm.  Id.

When inmates did not comply with Sergeant Robinson's lockdown order, he began to close cell doors on the bottom floor of the door, at which point yelling between inmates ensued. Id. at 3.  Sergeant Robinson initiated the lockdown because he could no longer control the situation and there was a threat to the safety of inmates or officers.  Id.  During this time, only Sergeant Robinson and a correctional officer located in the dormitory booth were present in the D-2 dorm.  Id.  Sergeant Robinson also transmitted a stress code, which is a call for assistance when an officer cannot handle a situation by himself.  Id.  When an officer signals a stress code, approximately 15 to 20 officers rush to the location of the scene armed with pepper spray, guns, tasers, and cameras, ready to provide assistance if necessary.  Id.  Once Sergeant Robinson sent the stress code in this case, approximately 10 to 15 officers responded, and the CERT also made their way to the dormitory.  Id.  Defendant Smith had no role in deploying the CERT and did not authorize the CERT to use force.  Id. at 11.

An unidentified inmate spoke on behalf of the dormitory and explained to Lieutenant Shelby the dorm was locked down a week ago over a missing mop and the inmates did not have the missing mop or broom.  Id. at 2.  At this point, approximately 85 inmates were present and 10 to 15 officers, and if the situation had escalated, the officers would have been in physical danger.  Id. at 3–4.  Following the conversation between the inmate-spokesperson and Lieutenant Shelby, Lieutenant Shelby ordered the inmates to lockdown and indicated officers were going to search for the mop and broom.  Id. at 4.  The inmates began to proceed to their cells for lockdown.  Id.  The inmates housed in the top of their dorm began to return to their cells and close their cell doors; the inmates in the bottom dorms also began to return to their cells but some inmates on the bottom dorm, whose cells were closed, waited for them to be opened.  Id.

Ten to fifteen seconds after the stress call, Defendant Collier and other members of the CERT arrived.  Id. at 8.  However, when Defendant Collier arrived, he was unaware the inmates had talked with Lieutenant Shelby.  Id. at 9.  Additionally, at this point, Plaintiff, along with eight or nine other inmates, had not yet returned to their cells.  Id. at 4, 8.

Defendant Collier observed a group of offenders in the top and bottom dorms refusing to lockdown.  Id. at 4.  Defendant Collier instructed inmates in a "loud[,] clear" voice to lockdown, but a large group of inmates refused to follow instructions and stood outside their cell, arguing with prison officers.  Id.  Plaintiff and two other inmates were the only remaining inmates who had not yet returned to their cells for lockdown.  Id.  As Defendant Collier entered the dorm, Plaintiff was talking to Officer Pauley.  Id. at 5.  Plaintiff had just gotten up from a bench, where he was situated next to Officer Pauley, and was approximately 10 to 15 feet from his open and unlocked cell.  Id. at 8.

Defendant Collier then observed Plaintiff's neighbor, inmate Ali, in an aggressive stance arguing with another officer and refusing to comply with the lockdown order.  Id. at 5, 8. Defendant Collier continued toward Ali, unhooked a can of MK-9 spray strapped to his leg, and deployed it in an aerial motion to compel all noncompliant offenders to return to their cells for lockdown as ordered.  Id. at 8–9.  As a result, Defendant Collier sprayed Lieutenant Shelby, Ali, inmate Craft, and Plaintiff, who was still outside of his cells about five to eight feet away from it. Id. at 5.  Plaintiff was sprayed quickly once with a heavy, dense mist which expanded 6 to 12 inches before it contacted him.  Id.  Plaintiff did not see the substance, he only felt it.  Id. Defendant Collier's single use of MK-9 while he was approximately four feet from Plaintiff is the extent of the force used against Plaintiff.  Id.  Plaintiff's cell door was open when he was sprayed.  Id. at 7.

Defendant Collier was attempting to get the situation under control by ensuring the inmates, including Plaintiff, returned to their cells and locked down as they had been instructed to do when he responded to the stress call and applied the MK-9 spray.  Id. at 6.  Specifically, Defendant Collier was trying to control inmates who were not locked down in their cells in response to Sergeant Robinson's stress call.  Id.  Defendant Collier deployed the MK-9 spray without prior authorization as a spontaneous use of force which, he believed, required immediate action.  Id.  Defendant Collier considered the situation an emergency that involved the control or disbursement of offenders under the Use of Force SOP.  Id. at 9.  Defendant Collier's conduct in moving toward the open cells, including Plaintiff's, was consistent with enforcing the lockdown instruction.  Id. at 6.

The Use of Force SOP provides the minimum level of authorization of use of chemical agents is the Warden or Superintendent or his designee, except in circumstances that can be

justified as spontaneous where immediate action is necessary.  Id. at 12.  Here, Defendant Smith did not order the use of force, was not personally involved on July 25, 2017, when Defendant Collier used MK-9 on Plaintiff, and was not present when officers responded to Sergeant Robinson's stress call.  Id. at 11–12.  Instead, Defendant Smith only learned of the use of MK-9 spray after it occurred.  Id. at 12.

The MK-9 spray used by Defendant Collier is an oleoresin capsicum ("OC") aerosol that is immediately effective, delivers an intense concentration of major apasaicinoids which inflames the mucous membranes and upper respiratory tract and any exposed skin, and diminishes a person's ability to continue violent or non-compliant actions.  Id. at 6.  The spray evaporates in a very short distance, eliminating the need for extensive area clean-up or personal decontamination procedures.  Id.  Once the subject is removed from the contaminated area to fresh air, the respiratory effects and intense burning sensation to the skin are resolved within minutes.  Id.

As soon as Plaintiff was sprayed with the MK-9, he fell to the floor.  Id. at 9.  Then, an officer picked up Plaintiff and placed him in handcuffs, and he was taken outside with other inmates, as it started to rain, and lined up against a fence to detoxify.  Id.  About 30 minutes later, Plaintiff and other inmates were taken to the medical unit.  Id.  Plaintiff sat on a bench in the medical unit and waited to have his vital signs checked.  Id.  Plaintiff was the first inmate the medical unit assessed, as he was prioritized due to being sprayed with MK-9.  Id. at 10.

Medical personnel advised Plaintiff his vital signs were normal, to let the air hit him to reduce the impact from the spray, and cleared him and escorted him back to his cell about 30 minutes later.  Id. at 10.  Additionally, at the medical unit a Use of Force Assessment was completed.  Id. at 7.  The Use of Force Assessment states Plaintiff had no physical injuries.  Id.  That is, medical personnel did not indicate Plaintiff was injured as a result of the MK-9 spray.

Id.  While Plaintiff reported during his medical examination he could not see, had trouble breathing, and his eyes burned, by the time Plaintiff left the medical unit, he was able to see.  Id.

The next morning, on July 26, 2017, Plaintiff and approximately 10 other inmates were transported to segregation because a disciplinary report had been issued against them for failing to follow the lockdown instructions.  Id. at 11.  Plaintiff was found guilty of failing to follow instructions after a disciplinary hearing.  Id.  While in segregation, Plaintiff filed a grievance about a lack of shower following being sprayed, which resulted in Plaintiff showering on Friday, July 28, 2017.  Id. at 7.

Plaintiff alleges his vision was damaged as a result of Defendant Collier spraying him with MK-9 and he now suffers from asthma as a result of the incident.  Id. at 7–8.  Plaintiff had not had his eyes examined for six months to a year prior to being sprayed on July 25, 2017.  Id. at 10.  Further, Plaintiff's vision did not start to worsen until a month of two after he got out of segregation in late August 2017.  Id.  Similarly, Plaintiff had not been assessed for breathing problems before July 25, 2017.  Id.  Plaintiff received an inhaler for asthma symptoms on October 18, 2017.  Id.

## DISCUSSION

### I.     Legal Standard

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  However, there must exist a conflict in substantial evidence to pose a jury question."  Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citing

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)).  "If the evidence [produced by the nonmoving party] is merely colorable or is not significantly probative summary judgment must be granted."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 at 249 (1986) (citations omitted).

The moving party bears the burden of establishing there is no genuine dispute as to any material fact and he is entitled to judgment as a matter of law.  See Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003).  Specifically, the moving party must identify the portions of the record which establish there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law."  Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011).  When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing the record lacks evidence to support the nonmoving party's case or the nonmoving party would be unable to prove his case at trial.  See id. (citing Celotex v. Catrett, 477 U.S. 317, 322–23 (1986)).  Once the party moving for summary judgment satisfies its initial burden, the burden shifts to the nonmoving party to come forward with specific facts showing a genuine dispute for trial.  Hinson v. Bias, 927 F.3d 1103, 1115 (11th Cir. 2019).  In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in the light most favorable to the nonmoving party.  Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee County, 630 F.3d 1346, 1353 (11th Cir. 2011).

## II.    Plaintiff's Excessive Force Claim Against Defendant Smith

Defendants argue they are entitled to summary judgment on Plaintiff's claim against Defendant Smith because the undisputed material facts show Defendant Smith was not personally involved in the decision to send the CERT or the use of MK-9 against Plaintiff.

Doc. 23-1 at 16–17.  Because Defendant Smith was not personally involved, Defendants argue

Defendant Smith cannot be held liable under the theory of respondeat superior.  Plaintiff states

he has no argument in response to the portion of Defendants' Motion seeking summary judgment

on his claims against Defendant Smith.  Doc. 27 at 4.

Here, the undisputed material facts show, while Defendant Smith may authorize the use

of force under relevant policies, he did not order the CERT to respond on July 25, 2017, nor was

he personally involved in Defendant Collier's use of MK-9 pray on Plaintiff.  Doc. 23-2 at 11–

12.  In fact, Defendant Smith was not present in the D-2 dormitory during these events and only

learned of the use of MK-9 spray after the incident when it was reported to him.  Id.

In § 1983 actions, liability must be based on something more than a defendant's

supervisory position or a theory of respondeat superior.  Bryant v. Jones, 575 F.3d 1281, 1299

(11th Cir. 2009); Braddy v. Fla. Dep't of Labor & Emp't Sec., 133 F.3d 797, 801 (11th Cir.

1998).  A supervisor may be liable only through personal participation in the alleged

constitutional violation or when there is a causal connection between the supervisor's conduct

and the alleged violations.  Braddy, 133 F.3d at 802.  Rather, in the Eleventh Circuit:

> [t]o state a claim against a supervisory defendant, the plaintiff must allege (1) the
> supervisor's personal involvement in the violation of his constitutional rights,
> (2) the existence of a custom or policy that resulted in deliberate indifference to
> the plaintiff's constitutional rights, (3) facts supporting an inference that the
> supervisor directed the unlawful action or knowingly failed to prevent it, or (4) a
> history of widespread abuse that put the supervisor on notice of an alleged
> deprivation that he then failed to correct.

Barr v. Gee, 437 F. App'x 865, 875 (11th Cir. 2011) (citing West v. Tillman, 496 F.3d 1321,

1328 (11th Cir. 2007)).  Typically, a Defendant cannot be held liable under § 1983 for rights

violations committed by subordinates.  See Jones v. Hall, 5:18-cv-46 (S.D. Ga. June 24, 2019),

ECF No. 14 at pp. 6–7; <u>Ford v. Perron</u>, No. 5:11-cv-15, 2011 WL 6888541, at *3 (S.D. Ga. Oct. 18, 2011).

Even though Defendant Smith broadly has the power to authorize use of force, there is no indication he did so here.  Further, Defendant Smith cannot be held liable based on his supervisory position alone, and the undisputed material facts show Defendant Smith had no personal involvement with any alleged violation of Plaintiff's rights.  Because Defendant Smith cannot be held liable for any rights violations allegedly committed by subordinates, I **RECOMMEND** the Court **GRANT** summary judgment in Defendant Smith's favor on Plaintiff's claim against Smith.

### III.    Plaintiff's Excessive Force Claim Against Defendant Collier

Defendants argue Defendant Collier is entitled to summary judgment on Plaintiff's Eighth Amendment excessive force claim because the circumstances justified his use of force and his use of force was not excessive.  Doc. 23 at 11–16.  In response, Plaintiff argues there is video footage that would create a genuine dispute of material fact regarding Defendant Collier's use of force.  Doc. 27 at 3.  However, no video evidence of the incident is in the record, and Plaintiff admits he is not currently in possession of any video footage.  <u>Id.</u>  Further, Plaintiff contends the use of force was done "maliciously and sadistically" and there was no need for Defendant Collier to use any force, but again, provides no evidence or citations to the record supporting this contention.  <u>Id.</u> at 4.

#### A.      Legal Standard

The Eighth Amendment's proscription against cruel and unusual punishment governs the amount of force prison officials are entitled to use against inmates.  <u>Campbell v. Sikes</u>, 169 F.3d 1353, 1374 (11th Cir. 1999).  An excessive force claim has two requisite parts: an objective and

a subjective component.  Sims v. Mashburn, 25 F.3d 980, 983 (11th Cir. 1994).  In order to satisfy the objective component, the inmate must show the prison official's conduct was "sufficiently serious."  Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  Subjectively, such "force is deemed legitimate in a custodial setting as long as it is applied 'in a good faith effort to maintain or restore discipline and not maliciously and sadistically to cause harm.'"  Burke v. Bowns, 653 F. App'x 683, 695 (11th Cir. 2016) (quoting Skritch v. Thornton, 280 F.3d 1295, 1300 (11th Cir. 2002)); Pearson v. Taylor, 665 F. App'x 858, 863 (11th Cir. 2016) ("The 'core judicial inquiry' for an excessive-force claim is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" (quoting Wilkins v. Gaddy, 559 U.S. 34, 37 (2010))). "Correctional officers in a prison setting can use pepper spray on an inmate, but there must be a valid penological reason for such a use of force."  Williams v. Rickman, 759 F. App'x 849, 851 (11th Cir. 2019).

The Eleventh Circuit Court of Appeals has "identified five factors to help evaluate whether force was applied maliciously or sadistically."  Pearson, 665 F. App'x at 863; Burke, 653 F. App'x at 695.  The factors are: (1) the need for the exercise of force; (2) the relationship between the need for force and the force applied; (3) the extent of injury the inmate suffered; (4) the extent of the threat to the safety of staff and other inmates; and (5) any efforts taken temper the severity of a forceful response.  Moore v. Hunter, 847 F. App'x 694, 698 (11th Cir. 2021) (citing Skrtich v. Thornton, 280 F.3d 1295, 1300 (11th Cir. 2002).

Any action taken should be viewed considering the wide-ranging deference accorded prison officials acting to preserve discipline and institutional security.  Hudson v. McMillian, 503 U.S. 1, 6 (1992).  For example, use of an appropriate degree of force to compel compliance

with a valid order is justified.  Brown v. Smith, 813 F.2d 1187, 1189 (11th Cir. 1987); see also

Ort v. White, 813 F.2d 318, 325 (11th Cir. 1987) (evaluating excessive force claim requires

consideration of whether immediate coercive measures were taken "in a good faith effort to

restore order or prevent a disturbance, and if the force used was reasonable in relation to the

threat of harm or disorder apparent at the time").

**B.    Analysis**

Defendants argue, even viewing the evidence in the light most favorable to Plaintiff, all

five factors weigh in favor of Defendant Collier.  Doc. 23-1 at 11–16.  Plaintiff does not address

each factor individually, but instead argues there was no need for use of force, so any use of

force under these circumstances violated his Eighth Amendment rights.  Doc. 27 at 4.  The Court

now addresses each of the factors the Eleventh Circuit has identified.

*1.    The need for the exercise of force.*

Plaintiff contends no force was needed because there was no threat of violence.  Doc. 27

at 4.  Defendants, on the other hand, argue Plaintiff's non-compliance with a direct command to

return to his cell and lockdown justifies the use of force.  Doc. 23-1.  Here, the undisputed

material facts show Plaintiff was still outside his cell when Defendant Collier arrived, even after

Lieutenant Shelby ordered the inmates into lockdown and Defendant Collier repeated this order.

Doc. 23-2 at 4–5, 8.  Indeed, Plaintiff does not dispute he was outside his cell at the time he was

sprayed with MK-9.  Plaintiff also acknowledges some inmates in the area were objecting to

correctional officers' instructions and correctional officers were at least initially outnumbered by

inmates in the area.

Where an inmate refuses to return to his cell, a prison official is justified in his use of

force.  Brown, 813 F.2d at 1189–90; see also Alday v. Groover, No. CV 212-108, 2014 WL

14

1320093, at *6 (S.D. Ga. Mar. 31, 2014) (noting plaintiff failed to follow officer's lawful

commands and an "official need not wait until disturbances are dangerous before using force to

restore order.") (citing Cockrell v. Sparks, 510 F.3d 1307, 1311 (11th Cir. 2007)); Miles v.

Jackson, 757 F. App'x 828, 830 (11th Cir. 2018) (finding a need for force where the inmate

failed to comply with an officer's orders to go further into a cell and evaded attempts at

compliance).  Accordingly, there was some legitimate need for force based on Plaintiff's non-

compliance with the lockdown order, and this factor weighs in Defendants' favor.

> ## 2.   *Relationship between the need for force and the force applied.*

For the second factor, the relationship between the need for force and the amount of force

applied, Defendants also argue this factor cuts in favor of Defendant Collier.  Doc. 23-1 at 13.

Plaintiff, in response, contends because there is no need for force, the Constitution can be

violated by even a small amount of force used.  Doc. 27 at 4.  As explained above, an inmate's

non-compliance with an order to return to his cell justifies the use of force.

Here, the force applied by Defendant Collier—a short spray of MK-9—was reasonably

related to the need for force—Plaintiff's non-compliance with the lockdown order.  Importantly,

the Eleventh Circuit has recognized usage of caustic sprays is a reasonable method to avoid a

potentially dangerous physical confrontation, particularly when the spray is of a short duration

and the recipient is provided adequate decontamination.  See Danley v. Allen, 540 F.3d 1298,

1307–08 (11th Cir. 2008), *overruled on other grounds, as recognized in* Randall v. Scott, 610

F.3d 701, 709 (11th Cir. 2010); Burke, 653 F. App'x at 696.  Here, Defendant Collier's short

discharge of MK-9 spray was appropriate given Plaintiff's noncompliance.  See Moore v.

Gwinnet County, 805 F. App'x 802, 809 (11th Cir. 2020) (holding a single use of a taser shock

was not disproportionate to the need for force where a suspect refused a police officer's

instruction); <u>Miles</u>, 757 F. App'x at 830 (holding the use of a takedown is not disproportionate to the need to control an inmate who failed to obey orders). Consequently, this factor cuts in favor of summary judgment for Defendants on Plaintiff's excessive force claim.

### 3.    The extent of Plaintiff's injuries.

The extent of Plaintiff's injuries also weighs in Defendants' favor. The extent of injury "is a relevant factor in determining whether the use of force could plausibly have been thought necessary under the circumstances and may be an indication of the amount of force applied." <u>Logan v. Smith</u>, 439 F. App'x 798, 800 (11th Cir. 2011) (citing <u>Wilkins v. Gaddy</u>, 559 U.S. 34, 37 (2010)). However, while the resulting injury can be indicative, the key inquiry is the amount of force applied by Defendant, not the severity of the injury that resulted to Plaintiff. <u>Id.</u> at 800–01 (citing <u>Wilkins</u>, 559 U.S. at 37). Injury and force are "imperfectly correlated," and "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." <u>Wilkins</u>, 559 U.S. at 38.

Plaintiff contends as a result of the MK-9 spray, his eyesight was damaged and he now requires an inhaler. Doc. 27 at 5. However, Plaintiff has provided no evidence in support of these allegations. Instead, the undisputed material facts show Plaintiff had no injuries after Defendant Collier sprayed him with MK-9, and notably, his vision was fine when he left the medical unit. Doc. 23-2 at 10. Further, Plaintiff has presented no evidence linking the months-later decline in his eyesight and need for an inhaler to Defendant Collier's use of MK-9. Thus, the evidence of record contradicts Plaintiff's assertion he suffered severe injuries or the amount of force Defendant Collier used against him was excessive. <u>See</u> <u>Wilson v. Walker</u>, No. 6:14-cv-28, 2015 WL 5884874, *5 (S.D. Ga. Oct. 7, 2015) (holding the extent of plaintiff's injuries cuts

in defendant's favor where objective evidence contradicts plaintiff's assertion he suffered more severe injuries).  Accordingly, this factor also cuts in Defendants' favor.

### 4.   The extent of the threat to the safety of staff and other inmates.

When Defendant Collier arrived, the undisputed material facts show Plaintiff's dormitory was being locked down.  Doc. 23-2 at 4–5, 8.  Though most of the inmates had returned to their cells, if officers had been unable to gain the remaining eight or nine inmates' compliance, a disturbance in operations or some other unrest could have occurred.  Indeed, if prison operations are disturbed, there is the potential for great risk to the safety of all involved.  This is particularly so when officers are securing an area for a lockdown.  Thus, this factor weighs in Defendants' favor.  See Clark v. Shedrick, No. 6:15-cv-81, 2017 WL 902890, *5 (S.D. Ga. Mar. 7, 2017).

### 5.   Any efforts taken temper the severity of a forceful response.

Given that Plaintiff's resulting injury was minimal, little effort was needed to mitigate the effects of the force that was applied.  Alday, 2014 WL 1320093, at *7.  Nonetheless, Plaintiff was promptly brought to the medical unit and was the first inmate examined because he was sprayed with MK-9.  Doc. 23-2 at 10.  There is no evidence or allegation Defendants attempted to delay any medical treatment for Plaintiff.

Moreover, Plaintiff's complaints about a lack of decontamination shower are also unavailing.  First, MK-9 spray is designed to avoid the need for personal decontamination.  Doc. 23-2 at 6.  Instead, once the subject is removed from the contaminated area to fresh air, the respiratory effects and intense burning sensation to the skin are resolved within minutes.  Id.  Further, Plaintiff was sprayed with MK-9 on July 25, 2017, and brought to segregation on July 26, 2017.  Id. at 7.  While in segregation, Plaintiff wrote a grievance about a lack of shower following being sprayed.  Plaintiff's grievance was promptly addressed, and he was able to

shower on July 28, 2017.  Id.  Thus, the evidence before the Court indicates efforts to temper any injury were promptly taken, as Plaintiff immediately received medical attention and was able to shower shortly after requesting one.  Accordingly, this factor also cuts in favor of Defendants.

In sum, the evidence, when viewed in the light most favorable to Plaintiff, does not "go beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives."  Campbell, 169 F.3d at 1375 (quoting Whitley, 475 U.S. at 322).  Nor does it "support a reliable inference of wantonness in the infliction of pain . . . ."  Id.  Because Plaintiff cannot satisfy the subjective component of an Eighth Amendment excessive force claim, summary judgment should be granted to Defendant Collier.  See Burke, 653 F. App'x at 696 (holding no reasonable jury could find short pepper spray of non-compliant inmate malicious and sadistic); Thompson v. Carani, No. 1:06-CV-099, 2008 WL 5088541 (S.D. Ga. 2008) (finding use of pepper spray on non-complaint inmate did not satisfy the Eighth Amendment's subjective component).

Accordingly, I **RECOMMEND** the Court **GRANT** summary judgment to Defendant Collier on Plaintiff's Eighth Amendment excessive force claim.[2]  Because Defendants' Motion for Summary Judgment is due to be granted as to both Defendant Smith and Defendant Collier, the Court declines to address whether Defendants are entitled to summary judgment based on

---

[2]        Defendants also move for summary judgment on any claims against them in their official capacities.  Doc. 23-1 at 10–11.  However, the Court already dismissed Plaintiff's official capacity claims.  See Doc. 9 at 1.  Accordingly, Defendants' arguments on any purported claims against them in their official capacities are **DENIED as moot**.  Additionally, Defendants argue Plaintiff is not entitled to recover compensatory or punitive damages under the Prison Litigation Reform Act ("PLRA").  Doc. 23-1 at 22.  However, Defendants submitted a Notice to the Court on April 22, 2021, withdrawing the portion of their argument related to punitive damages in light of the Eleventh Circuit's decision in Hoever v. Marks, 993 F.3d 1351 (11th Cir. 2021).  Doc. 30.  Because I recommend dismissal of Plaintiff's Eighth Amendment claims in their entirety and Defendants have withdrawn this argument, I do not address the issue further.

qualified immunity and whether the Prison Litigation Reform Act bars recovery for compensatory damages because Plaintiff has not shown a greater than *de minimis* physical injury.

## IV.   Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.  Though Plaintiff has not yet filed a notice of appeal, it is proper to address these issues now.  See Fed. R. App. P. 24(a)(3) (trial court may certify appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context must be judged by an objective standard.  Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  Thus, a claim is frivolous and not brought in good faith if it is "'without arguable merit either in law or fact.'"  Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Plaintiff's claims and Defendants' Motion for Summary Judgment, there are no non-frivolous issues to raise on appeal, and an appeal on these claims

would not be taken in good faith.  Thus, the Court should **DENY** Plaintiff *in forma pauperis*

status on appeal.

## CONCLUSION

Because both Defendant Smith and Defendant Collier are entitled to summary judgment,

I **RECOMMEND** the Court **GRANT** Defendants' Motion for Summary Judgment, **DIRECT**

the Clerk of Court to **CLOSE** this case and enter the appropriate judgment, and **DENY** Plaintiff

*in forma pauperis* status on appeal.

Any objections to this Report and Recommendation shall be filed within 14 days of

today's date.  Objections shall be specific and in writing.  Any objection that the Magistrate

Judge failed to address a contention raised in the Complaint or an argument raised in a filing

must be included.  Failure to file timely, written objections will bar any later challenge or review

of the Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C);

Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020).  To be

clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal

conclusions on appeal by failing to file timely, written objections.  Harrigan, 977 F.3d at 1192–

93; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United

States District Judge will make a de novo determination of those portions of the report, proposed

findings, or recommendation to which objection is made and may accept, reject, or modify in

whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not

meeting the specificity requirement set out above will not be considered by a District Judge.  A

party may not appeal a Magistrate Judge's report and recommendation directly to the United

States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final

judgment entered by or at the direction of a District Judge.

     **SO REPORTED and RECOMMENDED**, this 15th day of July, 2021.


BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA